# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANNETTE POLLOCK, VICTOR VIERA, JR., and MISAEL FERNANDEZ, on behalf of themselves and all others similarly situated, | |
| Plaintiffs, | 12 Civ. 8334 (TPG) |
| -against- | |
| LEGENDS HOSPITALITY, LLC and NEW YORK YANKEES PARTNERSHIP, | |
| Defendants. | |

## MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANT LEGENDS HOSPITALITY, LLC'S
## MOTION TO DISMISS

FITAPELLI & SCHAFFER, LLP
Joseph A. Fitapelli
Brian S. Schaffer
Eric J. Gitig
475 Park Avenue South, 12th Floor
New York, New York 10016
Phone: (212) 300-0375
Fax: (212) 481-1333

*Attorneys for Plaintiffs and
the Putative Class*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ii

PRELIMINARY STATEMENT ................................................................................1

STATEMENT OF FACTS .........................................................................................2

I.      PLAINTIFFS' COMPENSATION ................................................................2

ARGUMENT ..............................................................................................................3

I.      LEGAL STANDARD FOR A MOTION TO DISMISS .............................. 3

II.     LEGENDS PAID PLAINTIFFS LESS THAN MINIMUM WAGE. .........6

III.    LEGENDS CANNOT PROVE ENTITLEMENT TO THE RETAIL SERVICE
        EXEMPTION. ...............................................................................................8

        A.      Plaintiffs Are Not Commissioned Employees Within The Meaning Of The
                7(i) Exemption.. ............................................................................... 10

IV.     DIVERSITY EXISTS BETWEEN PLAINTIFFS AND DEFENDANT NEW
        YORK YANKEES PARTNERSHIP............................................................ 14

CONCLUSION......................................................................................................... 15

## TABLE OF AUTHORITIES

**Cases**................................................................................................................**Page Number**

*A.H. Phillips, Inc., v. Walling*, 324 U.S. 490 (1945) ................................................... 9

*Alderman v. 21 Club Inc.*, 733 F. Supp. 2d 461 (S.D.N.Y. 2010) .................................4, 5

*Alvarado v. Corporate Cleaning Serv., Inc.,* 719 F. Supp. 2d 935 (N.D.Ill. 2010) .........................11

*American Intern. Group, Inc. v. London American Intern. Corp. Ltd.*,
    664 F.2d 348 (2d Cir. 1981)........................................................................ 6

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................ 4

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................. 4

*Beyer v. County of Nassau*, 524 F.3d 160 (2d Cir. 2008) ........................................ 5

*Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697 (1945) ............................................. 6

*Carden v. Arkoma Assoc.*, 494 U.S. 185 (1990) ................................................. 15

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ................................................. 5

*Corning Glass Works v. Brennan*, 417 U.S. 188 (1974)......................................... 8

*Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775 (2d Cir. 2003)........................5-6

*Faulkner v. Beer*, 463 F.3d 130 (2d Cir. 2006)................................................. 4-5

*Halebian v. Berv*, 644 F.3d 122 (2d Cir. 2011) ................................................. 3

*Handelsman v. Bedford Village Assocs. Ltd. P'ship*, 213 F.3d 48 (2d Cir. 2000)........................ 15

*Havey v. Homebound Mortg., Inc.*, 547 F.3d 158 (2d Cir. 2008)................................. 8

*Holmes v. Grubman*, 568 F.3d 329 (2d Cir. 2009) ............................................. 4

*Jones v. East Brooklyn Security Servs. Corp.*,
    No. 11 Civ. 1021 (JG)(SMG), 2012 WL 3235784 (E.D.N.Y. Aug. 7, 2012)............................. 9

*Klinedinst v. Swift Invs., Inc.*, 260 F.3d 1251 (11th Cir. 2001)................................10, 11

*Kuntsmann v. Aaron Rents, Inc.*,
   No. 2:08 Civ. 01969 (KOB), 2012 WL 4813745 (N.D. Ala. Oct. 4, 2012)............................ 11-12

*Lundy v. Catholic Health System of Long Island Inc.*,
   No. 12-1453 (DJ), 2013 WL 765117 (2d Cir. Mar. 1, 2013)........................................................ 4

*Marshall v. Sam Dell's Dodge Corp.*, 451 F.Supp. 294 (N.D.N.Y. 1978) ...................................... 7

*Martinez v. Hilton Hotels Corp.*,
   No. 10 Civ. 7688 (JLC), 2013 WL 1087211 (S.D.N.Y. Mar. 15, 2013) .................................... 8

*Mechmet v. Four Seasons Hotels, Ltd.*, 825 F.2d 1173 (7th Cir.1987) .................................. 13, 14

*Myers v. Hertz Corp.,* 624 F.3d 537 (2d Cir. 2010) .........................................................................9

*In re Novartis Wage and Hour Litig.*, 611 F.3d 141 (2d Cir. 2010).................................................9

*Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*,
   322 F.3d 147 (2d Cir. 2003)................................................................................................... 3-4

*Owopetu v. Nationwide CATV Auditing Services, Inc.*,
   No. 5:10 Civ. 18 (CR), 2011 WL 883703 (D.Vt. Mar. 11, 2011) ............................ 9, 10, 11, 12

*Parker v. NutriSystem, Inc.*, 620 F.3d 274 (3d Cir. 2010) ..........................................................10, 11

*Perez v. Westchester Foreign Autos, Inc.*,
   No. 11 Civ. 6091 (ER), 2013 WL 749497 (S.D.N.Y. Feb. 28, 2013) ........................... 3, 4, 6, 7

*Reiseck v. Universal Communications of Miami, Inc.*, 591 F3d 101 (2d Cir. 2010)...................... 8-9

*Roth v. Jennings*, 489 F.3d 499 (2d Cir. 2007) ............................................................................... 4

*Saca v. Dav-El Reservation Systems, Inc.*, 600 F. Supp. 2d 483 (E.D.N.Y. 2009)................ 3-4, 9, 10

*Spicer v. Pier Sixty LLC*, 269 F.R.D. 321 (S.D.N.Y. 2010) ..................................................... 10, 11

*Staehr v. Hartford Fin. Servs. Group*, 547 F.3d 406 (2d Cir. 2008)............................................. 10

*Tennessee Coal, Iron & R.R. Co. v. Muscoda Local No. 123,* 321 U.S. 590 (1944)...................... 8

*United States v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487 (2d Cir. 1960).............................. 6

*Wicaksono v. XYZ 48 Corp.*,
   No. 10 Civ. 3635(LAK)(JCF), 2011 WL 2022644 (S.D.N.Y. May 2, 2011)............................. 6

*Wilks v. Pep Boys*, No. 3:02-0837 (AAT), 2006 WL 2821700 (M.D.Tenn. Sept. 26, 2006)..........11

*Yi v. Sterling Collision Ctrs., Inc.*, 480 F.3d 505 (7th Cir. 2007) ....................................................11

**Statutes** .................................................................................................**Page Number**

28 U.S.C. § 1332 ................................................................................................ 15

29 U.S.C. § 202(a) ............................................................................................... 8

29 U.S.C. § 206(a) ............................................................................................... 6

29 U.S.C. § 207(a) ............................................................................................... 8

29 U.S.C. § 207(i) ......................................................................................... *passim*

New York Labor Law ("NYLL"), Article 19, § 652 .......................................... 6


**Rules & Regulations** ...................................................................**Page Number**

29 C.F.R. § 516.16 ......................................................................................... 12-13

Fed. R. Civ. P. 12(b)(6) ............................................................................... *passim*

Fed. R. Civ. P. 56(a) ............................................................................................ 5

## PRELIMINARY STATEMENT

Plaintiffs, banquet servers who work at Yankee Stadium, commenced this putative class and collective action to recover unpaid wages from Defendants under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"), alleging Defendants failed to pay Plaintiffs minimum wage, overtime and other statutorily owed wages.[1]  Simply put, Plaintiffs were paid below the statutory minimum wage ($7.00 per hour rather than $7.15 or $7.25 per hour) and did not receive overtime pay at the appropriate rate.  Defendant Legends Hospitality, LLC's ("Legends") paystubs demonstrate that Plaintiffs worked overtime hours, and were paid overtime wages. Notwithstanding, after this lawsuit was filed, Legends, for the first time, is claiming Plaintiffs are exempt pursuant to the retail service exemption.  However, Legends' argument fails since Plaintiffs were clearly not paid "commissions," a mandatory requirement of the exemption.  In fact, no documents given to Plaintiffs, including their paystubs, ever refer to payments as commissions.

Legends argues that Plaintiffs were paid a percentage of the 20% service charge collected.  However, the records show that Plaintiffs were not paid a service charge for every event worked, and no document evidences a scenario where Plaintiffs will receive a percentage of a 20% service charge.  The only document mentioning a percentage of the service charge refers to a scenario where the service charge is between *1% and 19%*.

Notwithstanding the above, Legends moves to dismiss Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(6), alleging that Plaintiffs' federal minimum wage and overtime claims fail to state a claim upon which relief may be granted.  As will be demonstrated herein, Plaintiffs' well-plead Complaint, combined with Legends' own documents, amply allows the Court to draw the reasonable inference that Legends is liable for the alleged misconduct.  Consequently, Legends' motion must be denied.

---

[1]    In addition to Named Plaintiffs Annette Pollock ("Pollock"), Victor Viera, Jr. ("Viera"), and Misael Fernandez ("Fernandez"), eight additional Banquet Servers have presently filed a written consent to join this case.  *See* Docket.

## STATEMENT OF FACTS

Yankee Stadium is a sports and entertainment venue that plays host to the New York Yankees ("Yankees"), as well as a variety of additional private events. Legends and the Yankees contract with various individuals and corporate entities to host private events and banquets at Yankee Stadium. This service is available year round and allows customers to host private events for anywhere between 10 and 3,000-plus guests. *See* Complaint ¶ 4. Some, ***but not all***, of the customers who host events are charged a mandatory service charge equal to 20% of the cost of food and beverages in addition to the price of the event. *See* **Exhibit ("Ex.") A**, Event Orders, Bates Nos. 5-6.[2]

## I.    PLAINTIFFS' COMPENSATION

Plaintiffs' paystubs evidence that they were generally paid an hourly rate below the minimum wage. *See* **Ex. B**, Minimum Wage Paystubs. The paystubs also show that when Plaintiffs worked over 40 hours per week, they were paid overtime at a rate of 1.5 times their "Regular" (*i.e.*, the incorrect) rate. *See* **Ex. C**, Overtime Paystubs. Plaintiffs were also paid a portion of the service charges collected, which have been referred to as "Charged Tips" or "Service Charge" on their paystubs. *See* Declaration of Donald Croce ("Croce Decl.") ¶ 5. The event contracts executed between Legends and customers hosting private events have also consistently referred to the charges as either "Service Charge 20.00%" or "Additional Service Charge." *See* **Ex. A**, Event Orders. Moreover, despite the existence of a "Commission" category, Legends' extrinsic payroll summaries primarily recorded service charges in the "Tips" category until January 2012, after which time amounts have been designated as "Svc/Admin Chg." *See* Croce Decl. ¶ 5. An analysis of the payroll summaries submitted by Legends illustrates that the service charges were never identified as commissions for Plaintiffs Pollock and Viera, and were identified as commissions on only two occasions for Plaintiff Fernandez. *See* Exhibits A, B and C to the Croce Decl., generally.

---

[2]    Unless otherwise indicated, all exhibits are attached to the Declaration of Brian S. Schaffer.

Finally, Legends has never disclosed the precise percentage of the service charge that is allocated to Plaintiffs. In that regard, distribution of the 20% charges collected from customers hosting private events at Yankee Stadium is ***not*** governed by the CBA, which specifically states that "Banquet Servers working any catered event where a service charge is added to the customer charge shall receive an equal share of a pool based on up to 12.0% of net sales for ***service charges between 1.0% and 19.0%***." *See* Exhibit A to the Declaration of Daniel Smith, "CBA" at A-4 (emphasis added). Conveniently, since Legends imposed a 20% service charge, there is no provision in the CBA, or any other applicable agreement, governing service charges. At no time has Legends informed Plaintiffs that they were receiving commissions, or that they were commissioned employees of a retail service establishment paid pursuant to section 207(i) of the FLSA ("§ 7(i)"). Nor has Legends identified Plaintiffs as employees paid pursuant to § 7(i) with a notation on their payroll records. *See* **Ex. B**, Minimum Wage Paystubs; **Ex. C**, Overtime Paystubs; Exhibits A, B and C to the Croce Decl., generally.

## <u>ARGUMENT</u>

### I.   **LEGAL STANDARD FOR A MOTION TO DISMISS**

"[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits, and without regard for the weight of the evidence that might be offered in support of Plaintiff's claims." *Perez v. Westchester Foreign Autos, Inc.*, No. 11 Civ. 6091 (ER), 2013 WL 749497, at *5 (S.D.N.Y. Feb. 28, 2013) (*quoting Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (citation and internal quotation marks omitted)). "A complaint should not be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of

his claim which would entitle him to relief.'" *Saca v. Dav-El Reservation Systems, Inc.*, 600 F. Supp. 2d 483, 486 (E.D.N.Y. 2009) (*quoting Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP,* 322 F.3d 147, 158 (2d Cir. 2003) (citation and internal quotation marks omitted)). Thus, when ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court must "accept[] all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Lundy v. Catholic Health System of Long Island Inc.*, No. 12-1453 (DJ), 2013 WL 765117, at *4 (2d Cir. Mar. 1, 2013) (*quoting Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009)). If, as is the case here, a plaintiff's complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," then a defendant's motion to dismiss under Fed. R. Civ. P. 12(b)(6) cannot be granted. *Id.* (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) (holding that a defendant's motion to dismiss under Fed. R. Civ. P. 12(b)(6) must be denied where plaintiff's complaint pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged).

"In ruling on a motion to dismiss pursuant to Rule 12(b)(6), a district court generally must confine itself to the four corners of the complaint and look only to the allegations contained therein." *Perez*, 2013 WL 749497, at *5 (*citing Roth v. Jennings,* 489 F.3d 499, 509 (2d Cir. 2007)). While Legends moved to dismiss under Fed. R. Civ. P. 12(b)(6), they provided the Court with declarations, a CBA, payroll summaries, and other documents not referenced in the pleadings, and requested that the Court treat their motion as one for summary judgment. Generally, "[c]onsideration of material attached to a defendant's answer or motion to dismiss requires the court to convert the motion into one for summary judgment." *Alderman v. 21 Club Inc.*, 733 F. Supp. 2d 461, 466 (Griesa, J) (S.D.N.Y. 2010) (citations omitted). However, "[b]efore treating the

motion as one for summary judgment, the court must be assured that there is no dispute regarding the 'authenticity or accuracy' or 'relevance' of the documents submitted."  *Id.* at 467 (*quoting Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006)).  Here, such an assurance is impossible given the discrepancies between Plaintiffs' paystubs and Legends' submitted payroll summaries.  For example, the payroll summaries submitted by Legends for the purposes of this motion do not match Plaintiffs' paystubs.  Specifically, as demonstrated below, although Legends' payroll summaries indicate "payment" of service charges, corresponding paystubs clearly evidence that no distribution of service charges were received by Plaintiffs during that pay period.

| Plaintiff | Pay Period | Legends' Payroll Summaries | Plaintiffs' Paystubs |
|---|---|---|---|
| Victor Viera, Jr. | 11/11/2009 – 11/17/2009[3] | $286.37 "Tips" paid | No "Charged Tips" paid |
| Misael Fernandez | 2/3/2010 – 2/9/2010[4] | $178.96 "Tips" paid | No "Charged Tips" paid |

These clear-cut disparities seriously challenge the accuracy of Legends' submitted evidence. Consequently, Legends' motion must be treated as a motion to dismiss.

Even assuming, *arguendo*, that Legends' documents are presumed to be accurate, summary judgment is only warranted where the moving party demonstrates that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A genuine issue exists for summary judgment purposes "where the evidence is such that a reasonable jury could decide in the non-movant's favor." *Beyer v. County of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008).  Thus, when determining whether such factual issues exist, the Court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc. v. CIS Air Corp.*,

---

[3]      *Compare* **Ex. B**, Minimum Wage Paystubs**,** Bates No. 8, *with* **Ex. D**, Viera Payroll Summaries, Bates Nos. 67-68.

[4]      *Compare* **Ex. B**, Minimum Wage Paystubs**,** Bates No. 10, *with* **Ex. E**, Fernandez Payroll Summaries, Bates Nos. 39-40.

352 F.3d 775, 780 (2d Cir. 2003).  "If the party opposing summary judgment generates uncertainty as to the true state of any material fact, the procedural weapon of summary judgment is inappropriate," even if the court believes that the opposing party is unlikely to prevail on the merits after trial.  *American Intern. Group, Inc. v. London American Intern. Corp. Ltd.*, 664 F.2d 348, 351 (2d Cir. 1981) (citation and internal quotation marks omitted).  Accordingly, applying the summary judgment standard equally warrants a denial of Legends' motion.

## II.    LEGENDS PAID PLAINTIFFS LESS THAN MINIMUM WAGE.

Plaintiffs' paystubs indisputably demonstrate that Defendants failed to pay minimum wage for all of the hours Plaintiffs worked each pay period.  *See* **Ex. B**, Minimum Wage Paystubs.

The FLSA mandates that "[e]very employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce" a statutory minimum wage.  29 U.S.C. 206(a).  During the statutory period, the full minimum wage rate applicable to Plaintiffs has been: (a) $7.15 per hour for all hours worked from January 1, 2009 through July 23, 2009, and (b) $7.25 per hour for all hours worked from July 24, 2009 through the present.  NYLL § 652; *see also Wicaksono v. XYZ 48 Corp.*, No. 10 Civ. 3635(LAK)(JCF), 2011 WL 2022644, at *3 (S.D.N.Y. May 2, 2011) ("[W]here a plaintiff is entitled to damages under both federal and state wage law, a plaintiff may recover under the statute which provides the greatest amount of damages.") (citation omitted).  Both the Supreme Court and Second Circuit have indicated that a workweek is the applicable time period for calculating minimum wage.  *Perez*, 2013 WL 749497, at *10 (*citing Brooklyn Sav. Bank v. O'Neil,* 324 U.S. 697, 707-8 (1945); *United States v. Klinghoffer Bros. Realty Corp.,* 285 F.2d 487 (2d Cir. 1960)).  "[T]he Supreme Court has further emphasized the importance of paying an employee's minimum wage on a weekly basis." *Perez*, 2013 WL 749497, at *10 (*citing Brooklyn Sav. Bank,* 324 U.S. at 707-8).

In the instant matter, Plaintiffs were compensated at an hourly rate that fell below the applicable minimum wage rate.  While Legends had the ability to apply the portions of compulsory service charges paid to Plaintiffs toward the minimum wage requirements, it still had to ensure that Plaintiffs' combined earnings – *i.e.*, hourly wages plus service charges – equaled or exceeded the statutory minimum wage rate ***each workweek***.  *See Perez*, 2013 WL 749497, at *10 (citations omitted).  Nevertheless, Plaintiffs' paystubs irrefutably show there were workweeks where Plaintiffs were not paid any service charges and, consequently, earned a total of only $7.00 for every hour they worked.  *See* **Ex. B**, Minimum Wage Paystubs.  These paystubs conclusively prove that Plaintiffs were not paid minimum wage for all of the hours they worked each week.

Moreover, Legends' assertion that Plaintiffs have no cause of action because they "all received up to thousands of dollars per week" is a gross mischaracterization of the law.  *See, e.g., Perez*, 2013 WL 749497, at *10 (finding that commissioned sales consultants at an automobile dealership sufficiently alleged that they were paid less than minimum wage during workweeks where their shift play plus commissions fell below the required minimum wage, "regardless of whether they made in excess of minimum wage in other weeks"); *Marshall v. Sam Dell's Dodge Corp.*, 451 F.Supp. 294, 302-03 (N.D.N.Y. 1978) (holding that weekly payments made to commissioned car salespeople – consisting of a minimal weekly base salary plus commissions and bonuses – that exceeded minimum wage requirements did not offset other weekly payments that did not meet minimum wage requirements).

Since Plaintiffs have conclusively shown that they were paid below minimum wage in certain pay periods, Legends' motion to dismiss must be denied.

**III.     LEGENDS CANNOT PROVE ENTITLEMENT TO THE RETAIL
           SERVICE EXEMPTION.**

Legends does not – and cannot – dispute that Plaintiffs have worked in excess of 40 hours per week.  *See* **Ex. C**, Overtime Paystubs.  However, it is undeniable that Legends failed to pay the correct statutory minimum wage and consequently violated the FLSA by failing to pay overtime at 1.5 times the statutory minimum wage.  Notwithstanding this violation, Legends now claims Plaintiffs' overtime claims should be dismissed because Plaintiffs' are exempt commissioned employees.  Plaintiffs' well-plead Complaint, however, sufficiently permits the Court to infer that Legends violated the overtime provisions of the FLSA.  As such, Plaintiffs' overtime claims must not be dismissed.

"The FLSA was enacted to eliminate 'labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers,' and to 'guarantee [] compensation for all work or employment engaged in by employees covered by the Act.'"  *Havey v. Homebound Mortg., Inc.*, 547 F.3d 158, 160 (2d Cir. 2008) (*quoting* 29 U.S.C. § 202(a); *Tennessee Coal, Iron & R.R. Co. v. Muscoda Local No. 123,* 321 U.S. 590, 602 (1944)).  "Subject to certain exceptions, the FLSA … require[s] that employees who work more than 40 hours per week be compensated for overtime work at a rate of one and one-half times their regular rate of pay."  *Martinez v. Hilton Hotels Corp.*, No. 10 Civ. 7688 (JLC), 2013 WL 1087211, at *7 (S.D.N.Y. Mar. 15, 2013) (*citing* 29 U.S.C. § 207(a)(1)).   Here, Legends' mistakenly claims that Plaintiffs are exempt commissioned employees of a retail service establishment under 29 U.S.C. § 207(i) (the "7(i) exemption").

An employer seeking to rely upon an exemption as a defense to paying overtime bears the burden of proving that such exemption applies.  *Corning Glass Works v. Brennan*, 417 U.S. 188, 196-97 (1974); *Reiseck v. Universal Communications of Miami, Inc.*, 591 F3d 101, 104 (2d

Cir. 2010).  Further, because the FLSA is a remedial statute, "exemptions to the overtime pay requirement are 'narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit.'"  *Owopetu v. Nationwide CATV Auditing Services, Inc.*, No. 5:10 Civ. 18 (CR), 2011 WL 883703, at *3 (D.Vt. Mar. 11, 2011) (*quoting In re Novartis Wage and Hour Litig.*, 611 F.3d 141, 150 (2d Cir. 2010)); *see also A.H. Phillips, Inc., v. Walling,* 324 U.S. 490, 493 (1945) ("To extend an exemption to other than those plainly and unmistakably within its terms and spirit is to abuse the interpretative process and to frustrate the announced will of the people.").

Courts have recognized that "the exemption question" under the FLSA "is a mixed question of law and fact."  *Myers v. Hertz Corp.,* 624 F.3d 537, 548 (2d Cir. 2010).  Consequently, since a court's task in assessing a motion to dismiss under Fed. R. Civ. P. 12(b)(6) "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof," motions to dismiss plaintiffs' FLSA overtime claims on the basis of exemption defenses have repeatedly been denied as premature.  *See, e.g., Jones v. East Brooklyn Security Servs. Corp.*, No. 11 Civ. 1021 (JG)(SMG), 2012 WL 3235784, at *5 (E.D.N.Y. Aug. 7, 2012) ("I cannot say from the face of the complaint that [the plaintiff] is exempt under the FLSA, especially given my duty to construe this exemption narrowly and my recognition that defendants bear the ultimate burden of establishing it.  … I may not dismiss a complaint simply because the defendants disagree with the plaintiff's factual allegations."); *Saca*, 600 F. Supp. 2d at 487 (holding that because the defendant's FLSA exemption arguments "rely on extrinsic evidence rather than challenge the sufficiency of the allegations pled in the amended complaint," the defendants "must wait until the appropriate time for a post-discovery summary judgment motion").  The same result is warranted here, where Legends relies on an assortment of disputed factual issues and extrinsic evidence that

- 9 -

appears nowhere in Plaintiffs' Complaint.  *See Id.* at 486 ("Dismissal under Rule 12(b)(6) on the basis of an affirmative defense is appropriate only 'if the defense appears on the face of the complaint.'") (*quoting Staehr v. Hartford Fin. Servs. Group*, 547 F.3d 406, 426 (2d Cir. 2008)).

### A. Plaintiffs Are Not Commissioned Employees Within The Meaning Of The 7(i) Exemption.

To qualify for the 7(i) exemption, three conditions must be satisfied: (1) the employee must be employed at a retail or service establishment; (2) the employee's regular rate of pay must be in excess of 1.5 times the statutory minimum wage rate; and (3) more than half of the employee's compensation for a representative period must consist of commissions on goods or services.  29 U.S.C. § 207(i).  For purposes of this motion, Plaintiffs do not contest prongs one and two. However, since Legends seemingly classified Plaintiffs as non-exempt and Plaintiffs did not receive earnings from a bona fide commission plan, Legends cannot avail itself of the 7(i) exemption and their motion must be denied.

In an effort to feign entitlement to the 7(i) exemption, Legends mischaracterizes Plaintiffs' compensation structure as a bona fide commission plan.  However, given that Plaintiffs were never paid pursuant to a commission agreement and Legends failed to maintain and preserve required records, the exemption cannot be applied.

To satisfy the third prong of the 7(i) exemption, over half of an employee's compensation must be commissions "resulting from the application of a bona fide commission rate."  29 U.S.C. § 207(i).  Neither of the terms "commission" or "bona fide commission rate" are defined by the FLSA or U.S. Department of Labor ("DOL") interpretive regulations.  *Spicer v. Pier Sixty LLC*, 269 F.R.D. 321, 333 (S.D.N.Y. 2010) (citation omitted); *Owopetu*, 2011 WL 883703, at *3 (*citing Parker v. NutriSystem, Inc.*, 620 F.3d 274, 278 (3d Cir. 2010)).  "Indeed, the meaning of 'commission' under the FLSA 'is an issue that finds little illumination from the sparse case law

and the vague references in statutes and regulations.'" *Owopetu*, 2011 WL 883703, at *3 (*quoting Klinedinst v. Swift Invs., Inc.*, 260 F.3d 1251, 1254 (11th Cir. 2001)); *Spicer*, 269 F.R.D. at 333. Nevertheless, case law provides some direction, as:

> [C]ourts have generally concluded that there are three components to a commission-based compensation scheme: (1) the employee's compensation must be tied to customer demand or the quantity of sales; (2) the compensation plan must provide performance-based incentives for the employee to increase his or her income; and (3) there must be proportionality between the value of the goods or services sold, and the rate paid to the employee.

*Owopetu*, 2011 WL 883703, at *4 (*citing Yi v. Sterling Collision Ctrs., Inc.,* 480 F.3d 505, 508 (7th Cir. 2007); *Parker*, 620 F.3d at 284; *Wilks v. Pep Boys,* No. 3:02-0837 (AAT), 2006 WL 2821700, at *11 (M.D.Tenn. Sept. 26, 2006), *aff'd* by 2008 WL 2080551 (6th Cir. May 15, 2008)).

Here, Plaintiffs' compensation plan does not satisfy the second component, as Plaintiffs were offered no ***performance-based*** incentives to increase their income.   There was no correlation between how well Plaintiffs performed and how much service charge they earned. Rather, since "[t]he banqueting service charge is distributed to banquet servers proportionally based on the number of hours each worked during the event at issue," there is no performance-based component of the service charge distribution.  *Compare* Legends' Memorandum of Law at 2, *with Klinedinst*, 260 F.3d at 1256 (explaining that wages constituted a commission where the compensation plan "provide[d] incentives for employees to work efficiently and effectively"); *Alvarado v. Corporate Cleaning Serv., Inc.,* 719 F. Supp. 2d 935, 950 (N.D.Ill. 2010) (stating that compensation being "'decoupled from actual time worked' [is] a characteristic the Seventh Circuit has identified as a hallmark of 'how commissions work.'") (*quoting Yi*, 480 F.3d at 509); *Kuntsmann v. Aaron Rents, Inc.*, No. 2:08 Civ. 01969 (KOB), 2012 WL 4813745, at *12-13 (N.D. Ala. Oct. 4, 2012) (denying summary judgment with respect to the plaintiff's overtime

- 11 -

claims on the grounds that the connection between the plaintiff's individual sales and his compensation was too attenuated to demonstrate that he was properly compensated in accordance with § 7(i)).  This clearly negates the existence of a bona fide commission plan.

Moreover, it goes without saying that the quintessential element of any bona fide commission rate is that an employee receives some amount of compensation for the sale of ***all*** goods and services.  *See Owopetu*, 2011 WL 883703, at \*5 (stating that compensation ***may*** constitute bona fide commissions where employees "receive a percentage of the contract price paid by [the customer] for ***every*** work order").  Nevertheless, even considering the disputed extrinsic evidence submitted by Legends, it is clear that there were events where Plaintiffs did not receive any distribution of service charges.  *See* **Ex. F**, Pollock Payroll Summaries, Bates Nos. 51-52 (events dated: 9/2/2010; 9/2/2010; 9/8/2010), 63-64 (events dated: 8/1/2012; 8/6/2012; 9/6/2012).  As a result, Plaintiffs' compensation could not possibly include commissions resulting from the application of a bona fide commission rate.  *See* 29 U.S.C. § 207(i).

Additionally, Legends has not presented a single document purporting to classify Plaintiffs as exempt commissioned employees under § 7(i).  This uncontestably violates the applicable DOL Regulations, which provide that:

> With respect to each employee of a retail or service establishment exempt from the overtime pay requirements of the Act pursuant to the provisions of section 7(i), employers shall maintain and preserve payroll and other records [including]:
> (a) A symbol, letter or other notation placed on the payroll records identifying each employee who is paid pursuant to section 7(i).
> (b) A copy of the agreement or understanding under which section 7(i) is utilized.
> (c) Total compensation paid to each employee each pay period (showing separately the amount of commissions and the amount of noncommission straight-time earnings).

29 C.F.R. § 516.16.  At no point in time, however, has any of Legends' payroll records identified that Plaintiffs were paid pursuant to § 7(i).  Further, Legends lacks an agreement explaining that the 7(i) exemption is being applied to Plaintiffs.  In that regard, there has never been any agreement referring to Plaintiffs' pay as commissions.  Thus, since neither Plaintiffs' paystubs, Legends' extrinsic payroll summaries, nor the CBA identify Plaintiffs as commissioned employees paid pursuant to § 7(i), Legends will be unable to avail itself of the exemption.

Plaintiffs' position is not contrary to the relevant DOL Fact Sheet.  *See* **Ex. G**, DOL Fact Sheet.  Indeed, the Fact Sheet specifically states that mandatory service charges paid to service employees "***may*** be considered commission and, ***if other conditions in section 7(i) are met***, the service employees ***may*** be exempt from the payment of overtime premium pay."  Id. (emphasis added).  If the DOL had intended ***all*** mandatory service charges to be considered commissions and/or ***all*** service employees who receive such charges to be exempt from the payment of overtime premium pay, the Regulations and Fact Sheet would have stated so.  Instead, the Regulations and Fact Sheet explicitly state that other conditions of § 7(i) must be met.  Given that Legends failed to satisfy the other conditions in § 7(i), they cannot avail themselves of the exemption with respect to Plaintiffs.

To support its position, Legends relies heavily on the Seventh Circuit's holding in *Mechmet v. Four Seasons Hotels, Ltd.*, where it was found that mandatory service charges affixed by a hotel to every banquet charge was *a* commissions for the purposes of § 7(i).  825 F.2d 1173 (7th Cir. 1987).  Several critical facts, however, distinguish *Mechmet* from the case at bar.  For example, in Mechmet, the hotel added a service charge to "every banquet charge," whereas the instant Plaintiffs worked at events where no service charges were collected.  *Id.* at 1177; **Ex. F**, Pollock Payroll Summaries, Bates Nos. 51-52 (events dated: 9/2/2010; 9/2/2010; 9/8/2010), 63-64 (events dated: 8/1/2012; 8/6/2012; 9/6/2012).  Additionally, unlike the banquets

in *Mechmet*, the events at issue here were not big ticket items "requiring a concentrated effort by the banquet staff," nor were they held so irregularly that they were "a matter of feast or famine." *Mechmet,* 825 F.2d at 1177; **Ex. A**, Event Orders, Bates Nos. 4-7; Complaint ¶ 4 ("Defendants have provided private banquet/event services at Yankee Stadium.  This service is available year round and allows customers to host private events for anywhere between 10 and 3,000-plus guests."); *see also* Exhibits A, B and C to the Croce Decl., generally.  Further, "the length of a banquet [at Yankee Stadium could] easily be gauged in advance," as the "Start/End Time" was clearly stated on each Event Order. *See Mechmet,* 825 F.2d at 1177; **Ex. A**, Event Orders.  This fact, combined with the large roster of available banquet service employees, meant that it would have been easy for Legends to avoid assigning overtime hours to Plaintiffs.  *Compare Mechmet,* 825 F.2d at 1177 ("In a busy week the Ritz's small staff of regular banquet waiters (there are only 10) may have to work additional hours in order to take care of all the banquets."), *with* **Ex. H**, Legends' December 21, 2012 Letter to the Court (stating that there have been "approximately 22 Legends banquet servers and more than 100 other employees who occasionally performed banqueting work at some time between 2009 and today").  Given these discrepancies, it is clear that the holding in *Mechmet* cannot be applied to the instant matter.

For the reasons stated above, Plaintiffs cannot be classified as commissioned employees, and Legends cannot avail itself of the 7(i) exemption.  Thus, Legends' motion must be denied.

## IV.    DIVERSITY EXISTS BETWEEN PLAINTIFFS AND DEFENDANT NEW YORK YANKEES PARTNERSHIP.

Legends argues that if Plaintiffs' federal claims are dismissed, then no diversity exists between Plaintiffs and Defendant New York Yankees Partnership ("NYYP").  Legends is mistaken, as ultimately the Court should conclude that Plaintiffs are citizens of New York, and NYYP is a citizen of Ohio and Delaware.  Therefore, the Court would still retain diversity jurisdiction over this matter.

Federal district courts have diversity jurisdiction when there is complete diversity between the parties – *i.e.*, when all plaintiffs are citizens of different states from all defendants. *See* 28 U.S.C. § 1332.  Here, the Named Plaintiffs are all citizens of New York and NYYP is a citizen of Ohio and Delaware.

Legends' Declaration of Lonn A. Trost purports to explain the citizenship of NYYP.  In that regard, Mr. Trost states that NYYP is an Ohio limited partnership whose sole partner is YGE Holdings, LLC ("YGE"), a Delaware limited liability company.  *See* Declaration of Lonn A. Trost ¶¶ 2, 3, 4.  For the purposes of establishing diversity, a partnership has the citizenship of each of *its* partners, and a limited liability company has the citizenship of each of *its* members. *Carden v. Arkoma Assoc.*, 494 U.S. 185, 195-96 (1990); *Handelsman v. Bedford Village Assocs. Ltd. P'ship*, 213 F.3d 48, 51-52 (2d Cir. 2000).  However, when determining the citizenship of an unincorporated association the analysis stops there; courts are not asked to consider the citizenship of the members or partners of all parent associations to determine the citizenship of a subsidiary.  Rather, the courts must only look to each of a partnership's partners and each of an LLC's members.  Consequently, NYYP can only be considered a citizen of Ohio – where it was formed, and Delaware – where its only partner, YGE, is a citizen.  Taking into consideration YGE's members to determine the citizenship of NYYP is one step removed from the appropriate analysis.  As a result, Legends' attempt to destroy diversity falls flat.

## CONCLUSION

For the reasons stated herein, Plaintiffs respectfully request that the Court deny Legends' motion it its entirety.

Dated: New York, New York
      April 1, 2013

                                    Respectfully submitted,

                                    **FITAPELLI & SCHAFFER, LLP**

                                    By:

                                    /s/ Brian S. Schaffer_____
                                    Brian S. Schaffer

                                    **FITAPELLI & SCHAFFER, LLP**
                                    Joseph A. Fitapelli
                                    Brian S. Schaffer
                                    Eric J. Gitig
                                    475 Park Avenue South, 12th Floor
                                    New York, New York 10016
                                    Telephone: (212) 300-0375

                                    *Attorneys for Plaintiffs and*
                                    *the Putative Class*